**FINICAL v PENNA RD CO**

Ohio Appeals, 5th Dist, Richland Co

No 435.  Decided September, 1933

Lewis Brucker, Mansfield and Van C. Cook, Mansfield, for plaintiff in error.

Burt, Kinnison, Carson & Shadrach, Canton, and Weldon & Huston, Mansfield, for defendant in error.

## OPINION

LEMERT, J.

At the time this cause was called for trial in the Court of Common Pleas, Richland County, Ohio, counsel for the plaintiff made the following statement of the case to the jury:

"I was going to say Ladies and Gentlemen of the Jury, but I don't see any ladies. Gentlemen of the jury, this is an action brought by Leroy Finical against the Pennsylvania Railroad Company. Leroy Finical was working for the Pennsylvania Railroad Company at their shops as a machinist and had been for several years, and I think it was in 1930, July, he had an accident there, and this case is brought on account of injuries he claimed to have sustained in that accident.

Mr. Finical—his duty was to repair engines, and in July, 1930, he had a helper, and his helper will be here and testify in this case. Mr. Finical was a machinist, and the engine he was to repair, the evidence will show, the guide bar where the cross head of the engine goes back and forth, and this guide bar was loose and Mr. Finical was tightening up the nut on the guide bar. Mr. Finical, the evidence will show, this wrench was about thirty-six inches long and that the nut on the bolt was about one and three-eighths inches, and Mr. Finical was tightening this nut when this accident happened. The evidence will show there was a block of wood some three or four feet back of where he was working and there were draw bars, heavy bars, weighing about a ton laying on the block of wood, and we expect the evidence to show that Mr. Finical had nothing to do with putting the wood there or the draw bars.

The testimony will show that the wrench he was using was about, or the jaws of which were about an inch and three eighths wide. This wrench was furnished by the Railroad Company. Mr. Finical had nothing to do with the furnishing of the wrench. The testimony will show that they had a tool room and then whenever he wanted to use a wrench or tool the helper would go after the wrench or tool and would bring it to the machinist who was Mr. Finical.

The testimony will show when Mr. Finical received this wrench and it had been repaired, and Mr. Finical when the helper brought in the wrench, the testimony will show, the helper observed the wrench had been repaired, and it was not a monkey wrench, but just a solid wrench. Mr. Finical, in order to tighten the nut it was necessary to sit down on the floor and put his wrench on the underside of this guide bar on the nut.

The testimony will show before he did this he looked at the wrench and saw it had been repaired and that there were no flaws in it, and the evidence will show he used it. The testimony will show he got on the floor, put the wrench on the nut and was pulling on it, probably with half of his strength, when the jaws spread and the wrench slipped and he was precipitated backward, and that his back struck the wood back of him.

The testimony will show that the helper had nothing to do with the repairing of engines, he knew nothing about how it was done. The testimony will show they had wrenches, and the testimony will show that when these wrenches spread they would be heated by the blacksmith and cooled off, and that there was no inspection of the wrenches, no test made; the testimony will show this wrench, Mr. Finical ordered the helper to get a wrench and he went to the tool room and secured the kind that was wanted, that the helper didn't know anything about the wrench except as he would get it from the tool room. This wrench was brought to Mr. Finical from the tool room and he had no knowledge about the wrench, what its condition was, and we claim that the Railroad Company was negligent in not furnishing a tool that could be used by him without having this injury. That they were careless and didn't inspect it, didn't know its condition out in the tool room where the helper got it without knowing the condition of the wrench, and by reason of this wrench he was precipitated backward and badly injured.

We claim the company,—it was their duty to know the condition of the wrench, and that they didn't know the condition, or that they should have known its condition by the exercise of ordinary care.

Mr. Cook calls my attention to the fact the wrench will be before the jury. I want to change that, whether it will be here or not depend upon conditions. We probably will deny that the wrench brought here is the wrench.

Now, going to the condition of his injuries, "plaintiff further says that on account of being violently precipitated backward over said block of wood, as aforesaid, he then and there receiver the following injuries, to-wit: plaintiff's back was bruised and injured; that plaintiff's ribs on his left side near his spinal column were bruised and injured; that plaintiff's left kidney was bruised and injured; that he sustained a severe shock and that on account of said injuries aforesaid, plaintiff suffered and has continued to suffer great and excruciating pain; that he has been unable to sleep and has almost continuous headache; that he has become emaciated and weak and unable to perform any kind of manual labor, and plaintiff avers and believes that

said injuries are permanent and that plaintiff will never be able to perform manual labor; that prior to said injury plaintiff was strong, robust and in a healthy condition and able to perform and did perform continually hard manual labor." (Read from petition).

The testimony will show Mr. Finical was a strong, robust man; the testimony will show he has never been able to do anything since, any hard work, that his back pains him and hurts him. The testimony will show that Dr. Todd treated him after he was injured; that they sent him to the Railroad Doctor, and that he went to Dr. Todd because he wasn't getting along. Dr. Todd was his family physician. For about three weeks he had a temperature after the injury. The testimony will show, after the injury, that three or four o'clock in the afternoon he was there about an hour, and the testimony will show that he also saw the helper there, and the testimony will show that after the wrench slipped off he looked at it and saw the jaws were spread; and the testimony will show that before he used it the jaws were alright, and the helper observed the wrench before it was used and the jaws were alright. Afterwards the helper saw the jaws were spread.

· The testimony will show that the next day after the accident he came back unable to work, told the foreman of the situation and the foreman told him to stick around a while, and the next day he was unable to go to work, and has never been able since. He went to the Railroad Doctor, the evidence will show, and they fixed him up, but his pain and suffering has continued since that time. He went to Dr. Todd, the evidence will show, who will be on the witness stand, and the testimony will show Dr. Todd treated him and has continued to treat him up to the present time.

At the close of the above statement counsel for the defendant company moved the court for judgment on the opening statement of counsel for the reason that it showed no actionable negligence under the law, so that all that is submitted to this court for our determination is whether or not the court below committed error in the sustaining of said motion.

For the plaintiff to maintain his action it was necessary for him to allege such negligent action or conduct on the part of the defendant company to maintain his action under the law. As the case might proceed it would then become his duty to prove such negligent acts as alleged so that we are confronted with the question as to whether or not the opening statement of counsel to the jury showed such actionable negligence under the law to maintain the action of the plaintiff.

We have carefully examined the opening statement of counsel and we are of the opinion that if plaintiff had proven all and singular the things stated and stipulated in his opening statement to the jury that this action must fail. We deem it unnecessary to go into a lengthy opinion on this matter for the reason that it is so well settled that if the plaintiff in an action, especially in a negligence case, in an opening statement fails to show any actionable negligence it is the duty of the court to sustain a motion for the dismissal of the case.

From a careful examination of the record before us we are of the opinion that there is no error therein. It therefore follows that the judgment of the court below, will be, and the same is hereby, affirmed. Exceptions may be noted.

SHERICK, PJ, and MONTGOMERY, J, concur.